UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Susan Santosuosso      **05  10889 WGY**
    Plaintiff,      Civil Action No.
    *
    *
vs.     *
    MAGISTRATE JUDGE     *
    *
    *
Fortis Benefits Insurance Company    *
    Defendant,     *

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

RECEIPT # _____ 63882
AMOUNT $ 250
SUMMONS ISSUED _____
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _____
DATE _____

## COMPLAINT AND DEMAND FOR JURY TRIAL

### PARTIES

1. The Plaintiff Susan Santosuosso, (hereinafter "Plaintiff"), is an individual with a place of residence at 15 Shade Street, Randolph, Massachusetts, and a citizen of the United States of America.

2. Fortis Benefits Insurance Company, (hereinafter "Defendant"), is a foreign insurance company licensed in the State of Massachusetts, with a principal place of business located at 2323 Grand Avenue, Kansas City Missouri.

### JURISDICTION AND VENUE

3. The Court has jurisdiction of this matter as this is a claim for disability benefits provided in an employment benefit and therefore claims are controlled by 29 U.S.C. 18.

4. Venue is properly before this Court as the Plaintiff resides in the District of Massachusetts, the Defendant is a foreign corporation licensed to conduct

business in the District of Massachusetts, and the events occurred in the

District of Massachusetts.

## FACTS

5. The Plaintiff was an employee of Island Oasis Frozen Cocktail Co., Inc. of

   Walpole, Massachusetts (hereinafter "Employer").

6. As part of employee benefits provided to its employees, the Employer

   provided Group Long-Term Disability benefits.

7. The Employee Group Long-Term Disability Benefits were provided in an

   insurance policy (hereinafter the 'Policy") issued by the Defendant, Policy

   Number 47910.

8. The Plaintiff became entitled to the Employee Group Benefits provided

   pursuant to the Defendant's policy of insurance on February 1, 2003.

9. On or about May 23, 2003, the Plaintiff was admitted to the New England

   Baptist Hospital for the repair of a ventral hernia. Previous to this surgery the

   Plaintiff under went an aorto-bifermal bypass graft in January, 2001 without

   incident and/or residual complications. Post-operatively to the hernia surgery,

   the Plaintiff suffered complications which resulted in severe neuropathy,

   rendering her disabled. (Exhibit A)

10. The Plaintiff timely submitted a claim for long-term disability benefits

    pursuant to the terms of the Policy and was subsequently denied by the

    Defendant on October 27, 2003. (Exhibit B)

11. On January 14, 2004, the Plaintiff properly submitted an Appeal Request with supporting documentation with regard to the denial of her long-term disability claim to the defendant. (Exhibit C).

12. On March 11, 2004, the Defendant denied the Plaintiff's Appeal. (Exhibit D).

13. On July 30, 2004, the Plaintiff properly submitted an Appeals Request with the supporting documentation to the Defendant. (Exhibit E).

14. On September 8, 2004, the Defendant denied the Plaintiff's Appeal. (Exhibit F).

15. The Plaintiff has exhausted her administrative remedies.

## COUNT I.- BREACH OF CONTRACT

16. The Plaintiff hereby incorporates paragraphs 1-15 of the Complaint as if set forth fully herein.

17. The Defendant, based upon the facts as set forth herein, owed the Plaintiff a duty to pay the benefits based upon a claim of disability pursuant to its contractual agreement, Policy Number 47910.

18. The Defendant breached that duty to Plaintiff based upon the initial denial of benefits on or about October 27, 2003, again as set forth upon appeals and denials on March 11, 2004 and September 8, 2004.

19. The denial of the contractual benefits due the Plaintiff by the Defendant is the direct and proximate cause of the Plaintiff's harm.

20. As a result of the Defendant's denial of benefits the plaintiff has suffered and continues to suffer damages.

Wherefore the Plaintiff prays that this Honorable Court;

    a.  Grant judgment to the Plaintiff against the Defendant.

    b.  Order the Defendant to deliver to the Plaintiff any and all past monies owed pursuant to the terms and conditions of the contract in issue.

    c.  Order the Defendant to deliver onto the Plaintiff the monthly disability monies owed for future benefits pursuant to the terms and conditions of the Policy's provisions;

    d.  Order the Defendant to reimburse the Plaintiff for all expenses of this litigation, including interest, costs and attorneys fees.

    e.  Any and all such other and further relief as the Court deems just and equitable.

## JURY DEMAND

The Plaintiff demands a trial by jury on all issues in the complaint and defenses raised by the Defendant.

Respectfully submitted,
Susan Santosuosso, Plaintiff
By her attorney

Francis J. Hurley, Esq.
Gannon & Hurley, P.C.
470 West Broadway
PO Box E46
South Boston, MA 02127
BBO# 553199

Dated: April 29, 2005

**HARVARD MEDICAL SCHOOL**
DEPARTMENT OF SURGERY

DAVID R. CAMPBELL, M.D.
ASSOCIATE CLINICAL PROFESSOR
OF SURGERY
VASCULAR SURGERY



110 FRANCIS STREET,
BOSTON, MASSACHUSETTS 02215
TEL (617) 632-9848
Fax (617) 632-7794

December 19, 2003

Francis J. Hurley
Gannon & Hurley, P. C.
PO Box E46
470 West Broadway
South Boston, Massachusetts 02127

Re:    Susan Santosuosso
DOB:  8/16/58
SS#:   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

Dear Mr. Hurley:

Thank you for your letter on Susan Santosuosso concerning her long term disability claim from Fortis Benefits Insurance Company.

Mrs. Susan Santosuosso underwent an aorto-bifemoral bypass graft by me in January of 2001 and did very well following this. Specifically, at the beginning of May 2003 she was on vacation and was able to walk around without difficulty and even able to play sports. She was admitted shortly after this to the New England Baptist Hospital for repair of a ventral hernia and postoperatively, developed severe pain in her legs secondary to thrombosis of her graft and required graft thrombectomy to restore the circulation to her legs which left her with a painful neuropathy. It is my belief that something related to this hernia repair, be it pressure on the graft, stopping her Plavix, led to occlusion of her graft and her consequent neuropathy. If she hadn't had the hernia repaired, she would probably not have occluded her graft which led to her current disability. I, therefore, believe her current disability is connected with her hernia repair rather than a prior diagnosis of peripheral vascular disease.

I hope this is helpful.

Sincerely yours,

David R. Campbell, M. D.

DRC:beh

October 27, 2003



**FORTIS**

Solid partners, flexible solutions™

Ms. Susan Santosuosso
15 Shade Street
Randolph, MA  02368

Re:    Claim for disability benefits
       Policy: 47910/0/3/454

Dear Ms. Santosuosso,

This letter shall serve as notification of our denial of your long term disability claim.  In order to receive benefits under policy number 47910, you must meet the contractual definition of disability and satisfy all relevant policy provisions, including the qualifying period. To be considered disabled, you must satisfy the Occupation Test.

The remainder of this letter is broken down into: the relevant policy provisions, why your claim was denied, an occupational assessment, a medical assessment, pre-existing conditions, treatment dates, and the appeal procedures.

**Fortis Benefits
Insurance Company**

2323 Grand Boulevard
Kansas City, MO
64108-2670
Telephone
(816) 474-2345
Facsimile
(816) 881-8646
fortisbenefits.com

## POLICY PROVISIONS

### Occupation Test

During the first 36 months of a *period of disability* (including the *qualifying period*), an *injury*, or sickness, or pregnancy requires that you be under the *regular care and attendance of a doctor*, and prevents you from performing at least one of the *material duties* of your regular occupation.

### Qualifying Period

For a *covered person* insured under the Short Term Disability plan issued by us to the *policyholder*, the *qualifying period* is determined as follows:

If benefits are payable under the Short Term Disability Policy for the Maximum Benefits Period, the *qualifying period* is the Maximum Benefit Period; and in all other cases, 3 months

### Pre-Existing Conditions

We will not pay benefits for any *disability* caused by a pre-existing condition (defined below) until you have been at *active work* for a full day following the earlier of:



Page 2

**FORTIS**

Solid partners, flexible solutions™

- 3 consecutive months, ending on or after the day you became insured under the *long term disability insurance policy*, during which you do not consult with or receive advice from a licensed medical or dental practitioner or receive medical or dental care, treatment or services, including taking drugs, medicine, insulin, or similar substances, for that condition; or

- 12 consecutive months during which you are continuously insured under the *long term disability insurance policy.*

A "pre-existing condition" means an *injury*, sickness, or pregnancy or any related *injury*, sickness, or pregnancy for which you:

> consulted with or received advice from a licensed medical or dental practitioner; or

> received medical or dental care, treatment, or services, including taking drugs, medicine, insulin, or similar substances

during the 3 months that end on the day before you became insured under the *long term disability insurance policy.*

## WHY CLAIM WAS DENIED

Your claim is being denied as we have concluded that you were not disabled long enough to satisfy the qualifying period. That is, your initial condition of ventral hernia with repair did not prevent you from performing the material duties of your regular occupation long enough to qualify for benefits. You ceased work on May 23, 2003 and would have sufficiently recovered to resume working in your regular occupation as of 7/04/03. Postoperatively you began having symptoms related to peripheral vascular disease or related conditions which are pre-existing. A pre-existing condition is one in which you receive medical care or treatment prior to the effective date of coverage, and we identified such treatment. You became insured under long term disability policy number 47910 on February 1, 2003. You consulted with a physician and received medical care and treatment for your condition in the 3 month period prior to February 1, 2003. You were not continuously insured under the long term disability policy for 12 consecutive months as your disability began on May 23, 2003. In addition, you did not go without treatment for any 3 consecutive month period between November 1, 2002 and May 23, 2003.



Page 3

**FORTIS**

Solid partners, flexible solutions"

## OCCUPATIONAL ASSESSMENT

Your occupation is Office Support Worker. By occupation, we mean a group of jobs in which a common set of tasks is performed; or a group of jobs, which are related in terms of similar objectives and methodologies, and which may be related in terms of materials, products, worker actions, or worker characteristics.

## MEDICAL ASSESSMENT

Dr. Polly Galbraith, medical director, is board certified in family practice and insurance medicine. She reviewed all of the medical evidence in file and concluded that your disability resulted, either directly or indirectly, from a pre-existing condition. The medical information in file indicates that your initial disabling condition was due to ventral hernia repair, but almost immediately postoperatively, you began having symptoms related to your peripheral vascular disease or related conditions. The ventral hernia repair would have limited you for a maximum of 6 weeks. You would not have been limited beyond the 3 month qualifying period. You are limited from onset to the present due to peripheral vascular disease, thrombosis and related conditions. However, this condition and the related conditions are considered pre-existing.

It should be noted that medical care, treatment, or service includes not only doctor's visits and phone consultations, but also the taking of drugs, medicine, insulin, or similar substances. You were taking the prescription drug Plavix prior to and after your effective date of coverage, and up to the date you ceased work due to your disability.

## TREATMENT DATES

You ceased work on May 23, 2003 as a result of a hernia and peripheral neuropathy. As this was within 12 months of your February 1, 2003 effective date of coverage, we began an investigation to determine if your condition was both disabling and pre-existing. The medical information in file shows that you received the following care and treatment for your condition.

Between November 1, 2002 and January 31, 2003

- 10/26/02, 12/5/02, 1/14/03 Plavix #30 prescribed by Dr. Iarrobino for thrombotic events associated with peripheral vascular disease and coronary disease.
- 10/26/02, 11/23/02, 12/24/02 Lipitor #30 for hyperlipidemia prescribed by Dr Beauregard
- 11/20/02 Prevacid #30 prescribed by Dr. Iarrobino for GERD
- 11/21/02 Celebrex #21 prescribed by Dr. Iarrobino for unknown condition but typically used for arthritis
- 11/26/02 UGI and small bowel study performed for possible duodenal ulcer showed a small non-refluxing hiatal hernia, some evidence  for a post bulbar ulcer
- 12/5/02 consult with Dr. Iarrobino for cholesterol and H. pylori testing



**FORTIS**

Solid partners. flexible solutions®

Page 4

- 12/16/02 xray of hand for possible foreign body with none found
- 12/19/02 Lipids checked

Between February 1, 2003 and May 23, 2003

- consult for chest hurting for 5 days with cough and wheezes. You were diagnosed with bronchitis and questionable asthma. A sleep study was ordered for possible obstructive sleep apnea. Also questionable fullness in the left quadrant of abdomen. CT scan was ordered.
- 2/13/03 amoxicillin-clav for infection
- 2/13/03 albuterol inhaler for obstructive airway disease
- 2/13/03 guaifen for cough
- 2/26/03 Plavix #30
- 3/7/03 sleep study showed mild obstructive sleep apnea and restless leg syndrome. CPAP was recommended.
- 3/8/03 CT scan of abdomen and pelvis showed large para-umbilical hernia 5.6 cm in diameter with bowel loops lying in the subcutaneous adipose compartment with no bowel obstruction or strangulation. Extensive artherosclerotic calcifications prominent.
- 3/26/03 consult for "falling apart". Bruises, right leg cramps. Ecchymosis suspected due to Plavix and aspirin. Pruritis and dark urine. Hyperlipidemia. Pleuritis and costochondritis.
- 3/28/03 LFT's elevated. Discontinue Lipitor.
- 4/10/03 consult with surgeon Camer regarding your ventral hernia repair.
- 4/12/03 propoxyphene for postop pain by Dr. Camer
- 4/26/03 Transderm Scopalamine patches by Beauregard for motion sickness
- 5/15/03 consult for pre-operative history and physical for ventral hernia repair.

You received medical care and treatment for your peripheral neuropathy in the 3 month period prior to February 1, 2003, and you did not go without treatment for any 3 consecutive month period between November 1, 2002 and May 23, 2003, which was your onset date of disability.


**APPEAL PROCEDURES**

Enclosed please find a copy of the **Fortis Benefits Insurance Company Group Claim Denial Review Procedure**. This document describes the plan's review procedures, including your rights with respect to our



**FORTIS**

Solid partners. flexible solutions®

Page 5

administrative appeals process, and also describes your right to bring a lawsuit under Section 502(a) of the Employee Retirement Income Security Act of 1974, if your claim is governed by this Act.

If you disagree with our decision and wish to request a review, please submit a written statement indicating why you believe our decision is incorrect. You may complete and submit the attached Appeal Form to indicate your desire to request such a review. Along with that form or your written statement, please send any medical documentation you may have to support your opinion that you have a condition that is not pre-existing and is severe enough to keep you from working. Such medical evidence could include objective findings on exam, lab, physical testing, or psychological testing that supports limitations severe enough to keep you from working. If you are seeing a physician other than Drs. Campbell, Camer, or Iarrobino, please submit that doctor's medical records to us as it may help clarify the extent of your impairment. If you believe that Office Support Worker is not your relevant occupation because we do not have an accurate understanding of your positional requirements, please submit a narrative job description from your employer and/or comments from your immediate supervisor.

Feel free to contact me at 1-800-451-4531, extension 2765 should you have any questions or comments about this letter.

Yours sincerely,

Karri R. Sartain
Disability Claims Professional
Karri.sartain@us.fortis.com

enclosures

# SPECIAL NOTICES



### California Residents (only)

The California Code of Regulations requires that we advise you that if you believe you have been wrongfully denied benefits, you can take this matter up with the California department of Insurance. You may contact the Department by calling 1-800-927-4357 or 1-213-897-8921, or by writing to: California Department of Insurance, Consumer Services Division, 300 South Spring Street, Los Angeles, CA 90013.

### Illinois Residents (only)

Notice 9.19 of the rules and regulations of the Illinois Department of Insurance requires that we advise you that if you wish to take this matter up with the Illinois Department of Insurance, it maintains a Consumer Division in Chicago at 100 West Randolph Street, Suite 15-100, Chicago, IL 60606, and in Springfield at 320 West Washington Street, Springfield, IL 62767.

### Nebraska Residents (only)

If you believe that you have been wrongfully denied benefits, you may take this matter up with the Nebraska Department of Insurance, Terminal Building, Suite 400, 941 "O" Street, Lincoln, NE 68508. The Nebraska Department of Insurance can also be reached by calling 1-402-471-2201.

### New Hampshire Residents (only)

We will, of course, be available to you to discuss the position we have taken. Should you, however, wish to take this matter up with the New Hampshire Insurance Department, it maintains a service division to investigate complaints at 169 Manchester Street, Concord, NH 03301. The New Hampshire Insurance Department can be reached, toll-free, by dialing 1-800-852-3416.

### Ohio Residents (only)

If you wish to dispute the company's decision on this claim, you should contact the Benefit Center that handled your claim. If you wish to file a complaint, you may contact us at Fortis Benefits Insurance Company, Compliance Department, 2323 Grand Boulevard, Kansas City, MO 64108. In reviewing your complaint, the company will follow the complaint procedures required by your state.

If you disagree with the decision of the Fortis Benefits Disability Claims Appeals Committee, you have the right to file a complaint with the Ohio Department of Insurance, Consumer Services Division, 2100 Stella Court, Columbus, OH 43266-0566. The Ohio Insurance Department can also be reached by calling 1-614-644-2673, or by calling toll-free 1-800-686-1526.



**To the Claimant:**

If you wish to appeal, please read this entire document carefully; it contains important information.

As you will note from the attached letter, we have found it necessary to deny all or a portion of your claim for benefits under the policy. The information provided below explains the process and procedure to be followed if you desire a formal review of the claim denial.

**Fortis Benefits Insurance Company**
**Group Claim Denial Review Procedure**

You are entitled to a full and fair review that does not afford deference to the initial decision to deny benefits, and is conducted by a fiduciary of the plan who is neither the individual who made the initial decision, nor the subordinate of such individual. In order to request a review of our decision, you may contact the Plan Administrator, a named fiduciary or Fortis Benefits Insurance Company directly. The procedure for such review is as follows:

Your request for review must be in writing and made within 180 days of receipt of the written notice of denial.

You have the right to review, upon request and free of charge, copies of all documents, records, and other information relevant to your claim for benefits. You have the right to review copies of any internal rule, guideline, protocol, or other similar criterion that was relied upon in making our decision to deny your claim. You also have the right to request that we identify all medical or vocational experts whose advice was obtained on behalf of the plan.

You have the right to submit issues and comments in writing, along with additional documents, records, and other information relating to your claim.

If the request for review is not submitted directly to Fortis, then the Plan Administrator, or named fiduciary, will be responsible for forwarding your written request to us.

Within 45 days after Fortis Benefits Insurance Company receives a request for review, we will render a decision, unless we determine that special circumstances require an extension of time for assessing the evidence and processing the claim. In that event, we will render a decision within 90 days after the date the original written request for review was received.

Our decision will be in writing. It will include the specific reasons for the decision, it will cite the specific plan provisions on which the determination is based, and it will describe any additional information necessary to perfect the claim. Our written decision will either be furnished directly to you or the Plan Administrator, who will deliver it to you.

**Appeal Process**

The following is an explanation of the steps Fortis Benefits will take in handling your appeal for benefits.

First Review: If you request a review of our decision, your claim will be referred to an appeals specialist. This is an individual who was not previously involved in the decision to deny your claim. After considering your request for review, the appeals specialist will either overturn or uphold the denial. The appeals specialist will notify you of this decision in writing. Before reaching a decision, the appeals specialist may request additional information, an examination, an interview, or other evaluation, or consult with a health care professional or vocational expert regarding your claim.

Second Review: If your claim is denied after your initial request for review, you may request another review of our decision. Your request for review would then be forwarded to a manager in the Disability Claims area or to the Fortis Benefits Disability Claims Appeals Committee. The decision of that manager or committee is the final level of administrative review available.

**Right to Bring a Lawsuit**

If your claim is denied by the Fortis Benefits Disability Claims Appeals Committee or Disability Claims Manager as part of the Second Review described above, you have the right to bring a civil action under section 502(a) of the Employee Retirement Income Security Act of 1974, if your claim is governed by this Act.  You and your plan may have other voluntary alternative dispute resolution options, such as mediation.  One way to find out what may be available is to contact your local U.S. Department of Labor Office and your state insurance regulatory agency.

**FORTIS**

Solid partners, flexible solutions®

**Guidelines for Requesting a Review of the Denial Decision**

In the event you disagree with our decision, and before preparing your written request for review, we ask you to consider the following:

- Read the denial letter carefully.  It contains the specific reasons for the denial of your claim.

- Call us if you have any questions about the denial letter, or how to appeal the decision.

- If we concluded that you are not disabled, you may wish to discuss the contents of our denial letter with your physician.

There is a 180-day time limit, from your receipt of the denial letter, for filing your appeal.  We would encourage you to file your appeal as soon as you have drafted your written comments and gathered all of the evidence you wish to submit for us to review.

**Please utilize the attached APPEAL REQUEST form as an aid to assist you in preparing your written request for review. Returning this form will also expedite delivery of your appeal to our Appeal Team.**

Law Offices

# GANNON & HURLEY, P.C.

PO BOX E46
470 WEST BROADWAY
SOUTH BOSTON, MA 02127

PAUL J. GANNON
FRANCIS J. HURLEY
STEVEN M. LUNDBOHM

TEL: (617) 269-1993
FAX: (617) 269-7072

January 14, 2004

Fortis Benefits Insurance Company
2323 Grand Boulevard
Kansas City, MO 64108-2670

CERTIFIED MAIL: 7001 2510 0002 6772 3562
RETURN RECEIPT REQUESTED

Re:   Susan Santosuosso
      Appeal of Claim for Disability Benefits
      Policy: 47910/0/3/454

Dear Sir or Madam:

Please be advised that I am representing Susan Santosuosso relative to her claim for long-term disability benefits. Enclosed please find Ms. Santosuosso's Appeal Request, Statement of Information and supporting documents.

Thank you for your attention to this matter.

Very truly yours,

Francis J. Hurley

FJH/js
Enclosures

**Appeal Request**



**FORTIS**
Solid partners, flexible solutions®

**This form is to be used if you wish to appeal our decision. Attach another piece of paper if more room is needed for any of your responses.**

1.  *Tell us why* you believe our decision is incorrect. Be *specific* and complete as possible. We will be best able to address your concerns if you describe why you disagree with our determination.

> See A1 attached.

2.  If benefits were denied because we found you not disabled, *indicate* the conditions that you feel are/were limiting you, and *explain* to us how these conditions have impacted your daily activities. Also *describe* the activities you are currently able to engage in.

> N/A

3.  Please *list* the names, addresses and phone numbers of those individuals or organizations you believe have evidence that we are unaware of that supports your position, and *why.* (This could include, but is not limited to, physicians, psychologists, psychiatrists, physical therapists, hospitals and pharmacies.)

> David R. Campbell, M.D.
> 110 Francis Street
> Boston, MA 02215
> 617-632-9848

4.  *Attach* any additional records and documentation that you believe supports your position. (In the denial letter, we described various types of evidence that may assist you in perfecting your claim. Of course, you are not restricted to supplying us with only that information.)

    ☐ Check here if you will **not** be supplying any additional information.

5.  Please complete the attached **Statement of Information**, and return it, along with your completed **Appeal Request** and any **supporting documentation**, to the address shown on the letterhead of the denial letter.

    ☒ I wish to take advantage of my right to appeal and request that Fortis Benefits review the decision to deny benefits on my claim.

| *Susan J. Sartorius* | 1/14/04 | 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 |
|---|---|---|
| SIGNATURE | DATE | SOCIAL SECURITY NUMBER |

A1.

The basis for the denial of the claim for disability concluding that the current disability is the result of a pre-existing medical condition, namely peripheral vascular disease is mistaken. In support of this contention I direct your attention to Exhibit A in the claimants appeal documents, the December 19, 2003 correspondence authored by Dr. David R. Campbell. Dr. Campbell opines that something related to the hernia repair, be it pressure on the graft, stopping her plavix, led to the occlusion of her graft and her subsequent neuropathy. Dr. Campbell opined that "I therefore, believe her current disability is connected with her hernia repair rather than her prior diagnosis of peripheral vascular disease." Dr. Campbell pointed out that he performed an aorto-bifemoral bypass graft in January of 2001 and that following that Mrs. Santosuosso did very well. Most significantly, at the beginning of May 2003, which was just weeks before the repair of the ventral hernia, she was on vacation and was able to walk around without difficulty and even able to play sports.

I would point out that Dr. Campbell is an experienced and highly regarded board certified vascular surgeon and associate clinical professor of surgery at Harvard Medical School. With all due respect your medical assessment was conducted by Dr. Polly Galbraith, who is board certified in family practice and insurance medicine. Dr. Campbell has specific expertise in vascular surgery and was intimately aware of Mrs. Santosuosso's medical condition as he was her treating vascular surgeon. I would submit that Dr. Campbell is in the best position to provide an opinion as to the cause of Mrs. Santosuosso's disability after May 23, 2003. The hernia repair caused a new injury namely the occlusion of her graft and the resulting neuropathy; this had nothing to do with her prior diagnosis of peripheral vascular disease. She would not have become disabled and developed painful and disabling neuropathy, but for the ventral hernia repair which triggered the occlusion of her graft. She is not currently disabled from peripheral vascular disease. She is disabled from the damage caused to her, namely the neuropathy, as a result of the hernia repair.

# EXHIBIT A

HARVARD MEDICAL SCHOOL
DEPARTMENT OF SURGERY

DAVID R. CAMPBELL, M.D.
ASSOCIATE CLINICAL PROFESSOR
OF SURGERY
VASCULAR SURGERY



110 FRANCIS STREET,
BOSTON, MASSACHUSETTS 02215
TEL (617) 632-9848
FAX (617) 632-7794

December 19, 2003

Francis J. Hurley
Gannon & Hurley, P. C.
PO Box E46
470 West Broadway
South Boston, Massachusetts 02127

Re:    Susan Santosuosso
DOB:  8/16/58
SS#:  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

Dear Mr. Hurley:

Thank you for your letter on Susan Santosuosso concerning her long term disability claim from Fortis Benefits Insurance Company.

Mrs. Susan Santosuosso underwent an aorto-bifemoral bypass graft by me in January of 2001 and did very well following this. Specifically, at the beginning of May 2003 she was on vacation and was able to walk around without difficulty and even able to play sports. She was admitted shortly after this to the New England Baptist Hospital for repair of a ventral hernia and postoperatively, developed severe pain in her legs secondary to thrombosis of her graft and required graft thrombectomy to restore the circulation to her legs which left her with a painful neuropathy. It is my belief that something related to this hernia repair, be it pressure on the graft, stopping her Plavix, led to occlusion of her graft and her consequent neuropathy. If she hadn't had the hernia repaired, she would probably not have occluded her graft which led to her current disability. I, therefore, believe her current disability is connected with her hernia repair rather than a prior diagnosis of peripheral vascular disease.

I hope this is helpful.

Sincerely yours,

David R. Campbell, M. D.

DRC:beh

## Statement of Information—Update

**FORTIS**
Solid partners, flexible solutions®

### To be completed by Insured

Insured __Susan Santosuosso__    Policy/participation no. __4791010094454__

Insured's address __15 Shade Street, Randolph, MA 02368__

Insured's phone number __781-986-6359__    Policyholder __Susan Santosuosso__

**FORTIS**
Solid partners, flexible solutions®

1. Since you became disabled, have you acquired (or do you plan to acquire) any additional education or training?
   ☐ Yes  ☒ No  If "Yes," please describe.

2. Are you currently working or have you worked at any time since the inception of your disability for any employer or in your own business?  ☐ Yes  ☒ No  If "Yes," please describe.

3. The following questions should be answered to reflect your current income status. Please answer "Yes" or "No" to each source of income other than our Company's Long Term Disability Benefits. For every "Yes" answer indicate the **current** amount of each periodic benefit (*monthly, weekly, etc.*).

| | Yes | Current Amount | No |
|---|---|---|---|
| A. Social Security or Railroad Retirement Act? | | | |
|     1. Primary (*amount for person disabled*) | ☐ | $ _____ | ☒ |
|     2. Dependent | ☐ | $ _____ | ☒ |
| B. Workers' Compensation or similar legislation? | ☐ | $ _____ | ☒ |
| C. Group, Franchise, or Wholesale Income Replacement Plan? | ☐ | $ _____ | ☒ |
| D. Veteran's Administration or Welfare plan? | ☐ | $ _____ | ☒ |
| E. Monthly Income Disability Benefit from any group Life policies? | ☐ | $ _____ | ☒ |
| F. Federal, state, provincial, municipal, or other government agency? | ☐ | $ _____ | ☒ |
| G. Pension or retirement allowance? | ☐ | $ _____ | ☒ |
| H. Salary continuance in whole or in part? | ☐ | $ _____ | ☒ |
| I. Wages, salary, commissions, and fees for personal services rendered? | ☐ | $ _____ | ☒ |
| J. Other sources? | | | |

4. For any "Yes" answer in item 3., provide the following information:

| Name and Address of source | Policy or claim number, if any | Exact date benefits commenced or will commence |
|---|---|---|
| | | |
| | | |

I AUTHORIZE any provider of medical services, insurance or reinsuring company, consumer reporting agency, Social Security Administration, law enforcement agency, or employer, having information available as to diagnosis, treatment and prognosis with respect to any physical or mental condition any/or treatment of me and any other non-medical information of me to give to Fortis Benefits Insurance Company, its legal representative or agency employed by the Company, and all such information. I UNDERSTAND the information obtained will not be released by Fortis Benefits Insurance Company EXCEPT to reinsuring companies, or other persons or organizations performing business or legal services in connection with my claim or as may be otherwise lawfully required or as I may further authorize. I KNOW that I may request to receive a copy of the Authorization I AGREE that a photographic copy of this Authorization shall be as valid as the original. I AGREE this Authorization shall be valid for the duration of the claim. This authorization is not governed by HIPAA, however, when necessary, I may be asked to execute a HIPAA authorization form, allowing Fortis Benefits Insurance Company to use and disclose protected health information.

If I receive a disability benefit greater than that which should have been paid, I understand this Insurance Company has the right to recover such overpayments from me, including the right to reduce or adjust future disability benefits, if any.

Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information; or conceals, for the purpose of misleading, information concerning any fact material thereto, may be subject to criminal prosecution and civil penalties.

I certify to the best of my knowledge that the information on this form is a true and accurate statement of all material matters.

Date __1/14/04__    Signature __Susan J. Santosuosso__



**FORTIS**

Solid partners, flexible solutions.

March 11, 2004

Francis Hurley
Attorney at Law
Gannon & Hurley, P.C.
P.O. Box E46
470 West Broadway
South Boston, MA  02127

Re:  Susan Santosuosso
LTD. Policy #47910-03-454

Dear Mr. Hurley:

We have completed our review of your client's claim for group Long-Term Disability benefits and have concluded that our prior determination to deny benefits should be upheld.

According to Mrs. Santosuosso's group Long Term Disability policy through her employer, Island Oasis Frozen Cocktail, *disability* or *disabled* means:

### Occupation Test

- During the first 36 months of a *period of disability* (including the qualifying period), an injury, sickness, or pregnancy requires that you be under the *regular care and attendance* of a *doctor*, and prevents you from performing at least one of the *material duties* of your *regular occupation*.

*Material duties* means the sets of tasks or skills required generally by employers from those engaged in an *occupation*, which cannot be reasonably accommodated. We will consider one *material duty* of your *regular occupation* to be the ability to work for an employer on a *full-time* basis as defined in the policy. However, if a *material duty* of your *regular occupation* is to work more than 40 hours per week, we will consider you able to perform that *material duty* if you have the capacity to work at least 75% of those hours per week. In addition, no duty will be considered a *material duty* of your regular occupation if you were not able, as a result of *injury, sickness*, or pregnancy, to perform that duty with reasonable consistency at the time you became a *covered person* or entered that *occupation*, if later.

**Fortis Benefits
Insurance Company**
*Disability Claims
Management*

P.O. Box 419568
Kansas City, MO
64141-6568
Telephone
800-451-4531
(800) 451-4531
Facsimile
816-881-8524
fortisbenefits.com



**FORTIS**

Solid partners, flexible solutions®

Page 2

Mrs. Santosuosso's group Long-Term Disability policy also contains the following provision with regard to pre-existing conditions:

### Pre-Existing Conditions

We will not pay benefits for any *disability* resulting, directly or indirectly, from a pre-existing condition (defined below) unless the disability begins after the earlier of:

- 3 consecutive months, ending on or after the day you became insured under the *long term disability insurance policy*, during which you do not consult with or receive advice from a licensed medical or including taking drugs, medicine, insulin, or similar substances, for that condition; or

- 12 consecutive months during which you are continuously insured under the *long term disability insurance policy*.

A "pre-existing condition" means an *injury*, sickness, or pregnancy, symptom or physical finding, or any related *injury*, sickness, pregnancy, symptom or physical finding, for which you:

- consulted with or received advice from a licensed medical or dental practitioner; or

- received medical or dental care, treatment, or services, including taking drugs, medicine, insulin, or similar substances

during the 3 months that end on the day before you became insured under the *long term disability insurance policy*.

If your *disability* results from more than condition, we will determine whether you would be *disabled* in the absence of all pre-existing conditions. If we conclude that you are *disabled* by one or more conditions which are not pre-existing conditions, we will consider your claim as not resulting from a pre-existing condition for so long as this remains true.

We have concluded our review of your client's claim based upon the medical information contained in file including:

- medical records from Drs. Iarrobino, Campbell, and Camer;

- medical records from Faulkner, Milton and Beth Isreal Deaconess Hospital;

- pharmacy records from Walgreens;

- a review conducted by Dr. Galbraith, medical director for Fortis Benefits, who is board certified in family practice and insurance medicine, and

- an independent review conducted by Dr. Patman, who is board certified in vascular surgery.



**FORTIS**

Solid partners, flexible solutions¹

Page 3

Information contained in file indicates that Mrs. Santosuosso became employed on 1/6/03. Her effective date of coverage for group Long Term Disability benefits is 2/1/03. She ceased working on 5/23/03, as a result of surgery for a hernia. Dr. Galbraith conducted a review of the medical evidence contained in file on 10/16/03, and concluded, " She is limited from onset to present due to peripheral vascular disease, thrombosis and related conditions. Her ischemic peripheral neuropathy and related foot pain is related to peripheral vascular disease." As such, it is our conclusion that your client satisfies the Occupation Test as defined on page one of this letter, through at least October 2003.

Since your client is claiming disability commencing within one year of the effective date of her group Long-Term Disability coverage, it is necessary to conduct a pre-existing review. The applicable pre-existing period is 11/1/02 to 1/31/03. Dr. Galbraith noted the following treatment during the pre-existing period:

**DURING THE PRE-EXIST PERIOD: ( 11/1/02 to 1/31/03)**

12/5/02, 1/14/03-Plavix #30 prescribed by Dr. Iarrobino for thrombotic events associated with peripheral vascular disease and coronary disease
11/23/02, 12/24/02- Lipitor #30 for hyperlipidemia prescribed by Dr. Beauregard
11/20/02 -Prevacid #30 prescribed by Dr. Iarrobino for GERD
11/21/02- Celebrex #21 prescribed by Dr. Iarrobino for unknown condition but typically used for arthritis
11/26/02- UGI and small bowel study performed for possible duodenal ulcer showed a small non-refluxing hiatal hernia, and some evidence for a post bulbar ulcer
12/5/02 -consult with Dr. Iarrobino for cholesterol and H. pylori testing
12/16/02 -x-ray of hand for possible foreign body with none found
12/19/02 -Lipids checked

**After the Effective Date (2/1/03 to 5/23/03)**

2/13/03- Consult for chest hurting for 5 days with productive cough and wheezes. She was diagnosed with bronchitis and questionable asthma. She had a fever of 101. Sleep study ordered for possible obstructive sleep apnea. Also, questionable fullness in the left quadrant of abdomen. CT scan ordered.
2/13/03-amoxicillin-clav for infection #21
2/13/03-albuterol inhaler for obstructive airway disease
2/13/03-guaifen #14 for productive cough
2/26/03-Plavix #30
3/7/03-Sleep study showed mild obstructive sleep apnea and restless leg syndrome. CPAP was recommended.



**FORTIS**

Solid partners. flexible solutions™

Page 4

3/8/03-CT scan of abdomen and pelvis showed large para-umbilical hernia 5.6 cm. in diameter with bowel loops lying in the subcutaneous adipose compartment with no bowel obstruction or strangulation. Extensive atherosclerotic calcifications prominent.
3/26/03-Consult for "falling apart". Bruises, right leg cramps. Ecchymosis suspected due to Plavix and aspirin. Pruritis and dark urine. Hyperlipidemia. Pleuritis and costochondritis.
3/28/03-Lft's elevated? Discontinue Lipitor.
4/10/03-consult with surgeon, Dr. Camer regarding her ventral hernia repair
1/12/03-propoxyphene #30 for post op pain by Dr. Camer
4/26/03-Transderm Scopalamine #4 patches by Dr. Beauregard for motion sickness
5/15/03-Consult for pre operative history and physical for ventral hernia repair. BP 148/100 to 152/98 (elevated).

Dr. Galbraith indicated that Mrs. Santosuosso has a long, complicated medical history. Peripheral vascular disease is atherosclerosis of the blood vessels of the lower extremities. It is related to smoking, hyperlipidemia, and hypertension. Dr. Galbraith concluded that in the pre-existing period (11/1/02-1/31/03), Ms. Santosuosso consulted for, and was treated for, peripheral vascular disease, thrombosis, coronary artery disease, hyperlipidemia, abdominal pain, gastroesophageal reflux disease (GERD), ulcer, hiatal hernia, and possible arthritis. She did not go any 3 consecutive months without medical services for peripheral vascular disease and thrombosis. She also concluded that, "She is limited from onset to present due to peripheral vascular disease, thrombosis and related conditions. Her ischemic peripheral neuropathy and related foot pain is related to peripheral vascular disease."

Upon receipt of Mrs. Santosuosso's appeal, Dr. Patman, who is a board certified vascular surgeon, conducted an independent medical review. Dr. Patman was asked whether there is evidence that the occlusion of Mrs. Santosuosso's graft is related to complications from the ventral hernia itself. Dr. Patman stated that the records do not provide evidence that the occlusion of the graft is related to complications from the ventral hernia itself. Any type of stress such as an operative procedure will invoke various degrees of a hypocoagulable state. This is associated with the interruption of daily medications, which may contribute to thrombus and ultimate graft occlusion.

Dr. Patman was asked to comment on the cause of the neuropathy causing limitations in your client. Dr. Patman responded, "The neuropathy of the lower extremities causing limitations in Ms. Santosuosso is peripheral neuropathy of an ischemic basis because of multiple acute ischemic attacks and reoperative procedures on or about 6/7/02." Dr. Patman was also asked whether or not this complication or condition would have occurred in

Page 5



**FORTIS**

Solid partners, flexible solutions"

the absence of any peripheral vascular disease. Dr. Patman opined, "This condition would not have occurred in the absence of any peripheral vascular disease in Ms. Santosuosso."

It is therefore our conclusion that it is unclear if your client continues to meet the definition of disability through a current date, as we do not have updated medical records beyond September 2003. However, even if she did, she consulted for and was treated for peripheral vascular disease, thrombosis, coronary artery disease, hyperlipidemia, abdominal pain, gastroesophageal reflux disease (GERD), ulcer, hiatal hernia, and possible arthritis during the pre-existing period. She did not go any 3 consecutive months without medical services for peripheral vascular disease and thrombosis. Her ischemic peripheral neuropathy and related foot pain is related to peripheral vascular disease. As such, Mrs. Santosuosso's disabling condition is pre-existing, and there are no benefits available.

Enclosed please find a copy of the **Fortis Benefits Insurance Company Group Claim Denial Review Procedure**. This document describes the plan's review procedures, including your client's rights with respect to our administrative appeals process, and also describes her right to bring a lawsuit under Section 502(a) of the Employee Retirement Income Security Act of 1974, if her claim is governed by this Act.

If your client disagrees with our decision, and wishes to request a review, please submit a written statement indicating why she believes our decision is incorrect. She may complete, and submit the attached Appeal Form to indicate her desire to request such a review. Along with that form, or her written statement, provide us with medical evidence that she believes supports her position that she is prevented from performing at least one of the material duties of an office support worker through the 3 month qualifying period and is not pre-existing. Such medical evidence could include objective findings on exam, lab, physical testing, or psychological testing that supports limitations severe enough to keep Mrs. Santosuosso from performing at least one of the material duties of her occupation. If she is seeing a physician other than those listed on page two of this letter, please submit that doctor's medical records to us, as it may help clarify the extent of her impairment. If your client believes that office support worker is not her occupation, because we do not have accurate information about her position with Island Oasis Frozen Cocktail, please submit a narrative job description from her employer and/or comments from her immediate supervisor, and we will evaluate it to determine if it would impact our conclusion about her occupation. Upon receipt of this information, your client's claim will be scheduled for review by the Disability Appeals Committee. The Disability Appeals Committee is the final administrative level of review available.

Sincerely,

*Michele Falen*

Michele Falen
Disability Appeals Specialist

## Statement of Information—Update

**FORTIS**
Solid partners, flexible solutions®

### To be completed by Insured

Insured _____    Policy/participation no. __4791000454__

Insured's address _____

Insured's phone number _____    Policyholder _____

**FORTIS**
Solid partners, flexible solutions®

1. Since you became disabled, have you acquired (or do you plan to acquire) any additional education or training?

   ☐ Yes    ☐ No    If "Yes," please describe.

   _____

2. Are you currently working or have you worked at any time since the inception of your disability for any employer or in your own business?    ☐ Yes    ☐ No    If "Yes," please describe.

   _____

3. The following questions should be answered to reflect your current income status. Please answer **"Yes"** or **"No"** to each source of income other than our Company's Long Term Disability Benefits. For every **"Yes"** answer indicate the **current** amount of each periodic benefit (*monthly, weekly, etc.*).

| | Yes | Current Amount | No |
|---|---|---|---|
| A. Social Security or Railroad Retirement Act? | | | |
|     1. Primary (*amount for person disabled*) | ☐ | $ _____ | ☐ |
|     2. Dependent | ☐ | $ _____ | ☐ |
| B. Workers' Compensation or similar legislation? | ☐ | $ _____ | ☐ |
| C. Group, Franchise, or Wholesale Income Replacement Plan? | ☐ | $ _____ | ☐ |
| D. Veteran's Administration or Welfare plan? | ☐ | $ _____ | ☐ |
| E. Monthly Income Disability Benefit from any group Life policies? | ☐ | $ _____ | ☐ |
| F. Federal, state, provincial, municipal, or other government agency? | ☐ | $ _____ | ☐ |
| G. Pension or retirement allowance? | ☐ | $ _____ | ☐ |
| H. Salary continuance in whole or in part? | ☐ | $ _____ | ☐ |
| I. Wages, salary, commissions, and fees for personal services rendered? | ☐ | $ _____ | ☐ |
| J. Other sources? | | | |

4. For any "Yes" answer in item 3., provide the following information:

| Name and Address of source | Policy or claim number, if any | Exact date benefits commenced or will commence |
|---|---|---|
| | | |
| | | |
| | | |

I AUTHORIZE any provider of medical services, insurance or reinsuring company, consumer reporting agency, Social Security Administration, law enforcement agency, or employer, having information available as to diagnosis, treatment and prognosis with respect to any physical or mental condition any/or treatment of me and any other non-medical information of me to give to Fortis Benefits Insurance Company, its legal representative or agency employed by the Company, and all such information. I UNDERSTAND the information obtained will not be released by Fortis Benefits Insurance Company EXCEPT to reinsuring companies, or other persons or organizations performing business or legal services in connection with my claim or as may be otherwise lawfully required or as I may further authorize. I KNOW that I may request to receive a copy of the Authorization I AGREE that a photographic copy of this Authorization shall be as valid as the original. I AGREE this Authorization shall be valid for the duration of the claim. This authorization is not governed by HIPAA, however, when necessary, I may be asked to execute a HIPAA authorization form, allowing Fortis Benefits Insurance Company to use and disclose protected health information.

If I receive a disability benefit greater than that which should have been paid, I understand this Insurance Company has the right to recover such overpayments from me, including the right to reduce or adjust future disability benefits, if any.

Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information; or conceals, for the purpose of misleading, information concerning any fact material thereto, may be subject to criminal prosecution and civil penalties.

I certify to the best of my knowledge that the information on this form is a true and accurate statement of all material matters.

Date _____    Signature _____



**To the Claimant:**

If you wish to appeal, please read this entire document carefully; it contains important information.

As you will note from the attached letter, we have found it necessary to deny all or a portion of your claim for benefits under the policy. The information provided below explains the process and procedure to be followed if you desire a formal review of the claim denial.

**Fortis Benefits Insurance Company**
**Group Claim Denial Review Procedure**

You are entitled to a full and fair review that does not afford deference to the initial decision to deny benefits, and is conducted by a fiduciary of the plan who is neither the individual who made the initial decision, nor the subordinate of such individual. In order to request a review of our decision, you may contact the Plan Administrator, a named fiduciary or Fortis Benefits Insurance Company directly. The procedure for such review is as follows:

Your request for review must be in writing and made within 180 days of receipt of the written notice of denial.

You have the right to review, upon request and free of charge, copies of all documents, records, and other information relevant to your claim for benefits. You have the right to review copies of any internal rule, guideline, protocol, or other similar criterion that was relied upon in making our decision to deny your claim. You also have the right to request that we identify all medical or vocational experts whose advice was obtained on behalf of the plan.

You have the right to submit issues and comments in writing, along with additional documents, records, and other information relating to your claim.

If the request for review is not submitted directly to Fortis, then the Plan Administrator, or named fiduciary, will be responsible for forwarding your written request to us.

Within 45 days after Fortis Benefits Insurance Company receives a request for review, we will render a decision, unless we determine that special circumstances require an extension of time for assessing the evidence and processing the claim. In that event, we will render a decision within 90 days after the date the original written request for review was received.

Our decision will be in writing. It will include the specific reasons for the decision, it will cite the specific plan provisions on which the determination is based, and it will describe any additional information necessary to perfect the claim. Our written decision will either be furnished directly to you or the Plan Administrator, who will deliver it to you.

**Appeal Process**

The following is an explanation of the steps Fortis Benefits will take in handling your appeal for benefits.

First Review: If you request a review of our decision, your claim will be referred to an appeals specialist. This is an individual who was not previously involved in the decision to deny your claim. After considering your request for review, the appeals specialist will either overturn or uphold the denial. The appeals specialist will notify you of this decision in writing. Before reaching a decision, the appeals specialist may request additional information, an examination, an interview, or other evaluation, or consult with a health care professional or vocational expert regarding your claim.

Second Review: If your claim is denied after your initial request for review, you may request another review of our decision. Your request for review would then be forwarded to a manager in the Disability Claims area or to the Fortis Benefits Disability Claims Appeals Committee. The decision of that manager or committee is the final level of administrative review available.

**Right to Bring a Lawsuit**

If your claim is denied by the Fortis Benefits Disability Claims Appeals Committee or Disability Claims Manager as part of the Second Review described above, you have the right to bring a civil action under section 502(a) of the Employee Retirement Income Security Act of 1974, if your claim is governed by this Act. You and your plan may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office and your state insurance regulatory agency.

**FORTIS**

Solid partners, flexible solutions*

**Guidelines for Requesting a Review of the Denial Decision**

In the event you disagree with our decision, and before preparing your written request for review, we ask you to consider the following:

- Read the denial letter carefully. It contains the specific reasons for the denial of your claim.

- Call us if you have any questions about the denial letter, or how to appeal the decision.

- If we concluded that you are not disabled, you may wish to discuss the contents of our denial letter with your physician.

There is a 180-day time limit, from your receipt of the denial letter, for filing your appeal. We would encourage you to file your appeal as soon as you have drafted your written comments and gathered all of the evidence you wish to submit for us to review.

**Please utilize the attached APPEAL REQUEST form as an aid to assist you in preparing your written request for review. Returning this form will also expedite delivery of your appeal to our Appeal Team.**

Law Offices

# GANNON & HURLEY, P.C.

PO BOX E46
470 WEST BROADWAY
SOUTH BOSTON, MA 02127

PAUL J. GANNON
FRANCIS J. HURLEY
STEVEN M. LUNDBOHM

TEL: (617) 269-1993
FAX: (617) 269-7072

July 30, 2004

Fortis Benefits Insurance Company
2323 Grand Boulevard
Kansas City, MO 64108-2670

CERTIFIED MAIL: 7002 0860 0003 9749 9082
RETURN RECEIPT REQUESTED

Re:     Susan Santosuosso
        Appeal of Claim for Disability Benefits
        Policy: 47910/0/3/454

Dear Sir or Madam:

    With regard to the above referenced please find enclosed Ms. Santosuosso's
Appeal Request and supporting documents.

    Thank you for your attention to this matter.

                            Very truly yours,

                            Francis J. Hurley

                            Francis J. Hurley

FJH/tmm
Enclosures

**Appeal Request**

**FORTIS**

Solid partners, flexible solutions™

**This form is to be used if you wish to appeal our decision. Attach another piece of paper if more room is needed for any of your responses.**

1. *Tell us why* you believe our decision is incorrect. Be *specific* and complete as possible. We will be best able to address your concerns if you describe why you disagree with our determination.

   See attached A1

2. If benefits were denied because we found you not disabled, *indicate* the conditions that you feel are/were limiting you, and *explain* to us how these conditions have impacted your daily activities. Also *describe* the activities you are currently able to engage in.

   N/A

3. Please *list* the names, addresses and phone numbers of those individuals or organizations you believe have evidence that we are unaware of that supports your position, and *why*. (This could include, but is not limited to, physicians, psychologists, psychiatrists, physical therapists, hospitals and pharmacies.)

   David R. Campbell, M.D.
   110 Francis Street
   Boston, MA 02215
   617-632-9848

4. *Attach* any additional records and documentation that you believe supports your position. (In the denial letter, we described various types of evidence that may assist you in perfecting your claim. Of course, you are not restricted to supplying us with only that information.)

   ☐ Check here if you will **not** be supplying any additional information.

5. Please complete the attached **Statement of Information**, and return it, along with your completed **Appeal Request** and any **supporting documentation**, to the address shown on the letterhead of the denial letter.

   ☒ I wish to take advantage of my right to appeal and request that Fortis Benefits review the decision to deny benefits on my claim.

   *Susan J. Santosuosso*     7/30/04     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
   ─────────────────          ───────     ──────────────────────
   SIGNATURE                  DATE        SOCIAL SECURITY NUMBER

**Fortis Benefits Insurance Company**

A1.

The basis for the denial of the claim for disability concluding that the current disability is the result of a pre-existing medical condition, namely peripheral vascular disease is mistaken. In support of this contention I direct your attention to Exhibit A in the claimants appeal documents, the December 19, 2003 correspondence authored by Dr. David R. Campbell. Dr. Campbell opines that something related to the hernia repair, be it pressure on the graft, stopping her plavix, led to the occlusion of her graft and her subsequent neuropathy. Dr. Campbell opined that "I therefore, believe her current disability is connected with her hernia repair rather than her prior diagnosis of peripheral vascular disease." Dr. Campbell pointed out that he performed an aorto-bifemoral bypass graft in January of 2001 and that following that Mrs. Santosuosso did very well. Most significantly, at the beginning of May 2003, which was just weeks before the repair of the ventral hernia, she was on vacation and was able to walk around without difficulty and even able to play sports.

I would point out that Dr. Campbell is an experienced and highly regarded board certified vascular surgeon and associate clinical professor of surgery at Harvard Medical School. With all due respect your medical assessment was conducted by Dr. Polly Galbraith, who is board certified in family practice and insurance medicine. Dr. Campbell has specific expertise in vascular surgery and was intimately aware of Mrs. Santosuosso's medical condition as he was her treating vascular surgeon. I would submit that Dr. Campbell is in the best position to provide an opinion as to the cause of Mrs. Santosuosso's disability after May 23, 2003. The hernia repair caused a new injury namely the occlusion of her graft and the resulting neuropathy; this had nothing to do with her prior diagnosis of peripheral vascular disease. She would not have become disabled and developed painful and disabling neuropathy, but for the ventral hernia repair which triggered the occlusion of her graft. She is not currently disabled from peripheral vascular disease. She is disabled from the damage caused to her, namely the neuropathy, as a result of the hernia repair.

# EXHIBIT A

HARVARD MEDICAL SCHOOL
DEPARTMENT OF SURGERY

DAVID R. CAMPBELL, M.D.
ASSOCIATE CLINICAL PROFESSOR
OF SURGERY
VASCULAR SURGERY



110 FRANCIS STREET,
BOSTON, MASSACHUSETTS 02215
TEL (617) 632-9848
FAX (617) 632-7794

December 19, 2003

Francis J. Hurley
Gannon & Hurley, P. C.
PO Box E46
470 West Broadway
South Boston, Massachusetts 02127

Re:   Susan Santosuosso
      DOB: 8/16/58
      SS#:  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

Dear Mr. Hurley:

        Thank you for your letter on Susan Santosuosso concerning her long term disability claim from Fortis Benefits Insurance Company.

        Mrs. Susan Santosuosso underwent an aorto-bifemoral bypass graft by me in January of 2001 and did very well following this. Specifically, at the beginning of May 2003 she was on vacation and was able to walk around without difficulty and even able to play sports. She was admitted shortly after this to the New England Baptist Hospital for repair of a ventral hernia and postoperatively, developed severe pain in her legs secondary to thrombosis of her graft and required graft thrombectomy to restore the circulation to her legs which left her with a painful neuropathy. It is my belief that something related to this hernia repair, be it pressure on the graft, stopping her Plavix, led to occlusion of her graft and her consequent neuropathy. If she hadn't had the hernia repaired, she would probably not have occluded her graft which led to her current disability. I, therefore, believe her current disability is connected with her hernia repair rather than a prior diagnosis of peripheral vascular disease.

        I hope this is helpful.

                                        Sincerely yours,

                                        David R. Campbell, M.D.

DRC:beh



**FORTIS**

Solid partners, flexible solutions®

September 8, 2004

Francis Hurley
Attorney at Law
Gannon & Hurley, P.C.
P.O. Box E46
South Boston, MA  02127

Re: Susan Santosuosso
LTD.  Policy #47910/0/3/454

Dear Mr. Hurley:

**Fortis Benefits
Insurance Company**
*Disability Claims
Management*

P.O. Box 419568
Kansas City, MO
64141-6568
Telephone
800-451-4531
(800) 451-4531
Facsimile
816-881-8524
fortisbenefits.com

The Fortis Benefits Disability Appeals Committee convened on 08/31/04 to review your client's claim for group Long-Term Disability benefits.  The Committee concluded that our prior determination to deny benefits should be upheld.  A copy of our previous denial letter, dated 3/11/04, is enclosed and is incorporated by reference.   According to Mrs. Santosuosso's group Long -Term Disability policy through her former employer, Island Oasis Frozen Cocktail, *disability* or *disabled* means:

**Occupation Test**

* During the first 36 months of a *period of disability* (including the qualifying period), an injury, sickness, or pregnancy requires that you be under the *regular care and attendance* of a *doctor*, and prevents you from performing at least one of the *material duties* of your *regular occupation*.

*Material duties* means the sets of tasks or skills required generally by employers from those engaged in an *occupation*, which cannot be reasonably accommodated. We will consider one *material duty* of your *regular occupation* to be the ability to work for an employer on a *full-time* basis as defined in the policy.  However, if a *material duty* of your *regular occupation* is to work more than 40 hours per week, we will consider you able to perform that *material duty* if you have the capacity to work at least 75% of those hours per week.  In addition, no duty will be considered a *material duty* of your regular occupation if you were not able, as a result of *injury, sickness*, or pregnancy, to perform that duty with reasonable consistency at the time you became a *covered person* or entered that *occupation*, if later.

*Regular occupation* means the occupation in which you were working immediately prior to becoming *disabled*.

Page 2

**FORTIS**

Solid partners, flexible solutions®

Mrs. Santosuosso's group Long-Term Disability policy also contains the following provision with regard to pre-existing conditions:

### Pre-Existing Conditions

We will not pay benefits for any *disability* resulting, directly or indirectly, from a pre-existing condition (defined below) unless the disability begins after the earlier of:

- 3 consecutive months, ending on or after the day you became insured under the *long term disability insurance policy*, during which you do not consult with or receive advice from a licensed medical or including taking drugs, medicine, insulin, or similar substances, for that condition; or

- 12 consecutive months during which you are continuously insured under the *long term disability insurance policy*.

A "pre-existing condition" means an *injury*, sickness, or pregnancy, symptom or physical finding, or any related *injury*, sickness, pregnancy, symptom or physical finding, for which you:

- consulted with or received advice from a licensed medical or dental practitioner; or

- received medical or dental care, treatment, or services, including taking drugs, medicine, insulin, or similar substances

during the 3 months that end on the day before you became insured under the *long term disability insurance policy*.

If your *disability* results from more than condition, we will determine whether you would be *disabled* in the absence of all pre-existing conditions. If we conclude that you are *disabled* by one or more conditions which are not pre-existing conditions, we will consider your claim as not resulting from a pre-existing condition for so long as this remains true.

The Committee concluded their review of your client's claim based on the medical information received from:

- medical records from Drs. Iarrobino, Campbell, and Camer;

- medical records from Faulkner, Milton and Beth Isreal Deaconess Hospital;

- pharmacy records from Walgreens;

- a review conducted by Dr. Galbraith, medical director for Fortis Benefits, who is board certified in family practice and insurance medicine, and



Page 3

**FORTIS**

Solid partners, flexible solutions®

- an independent review conducted by Dr. Patman, who is board certified in vascular surgery.

Information contained in file indicates that Mrs. Santosuosso became employed on 1/6/03. Her effective date of coverage for group Long Term Disability benefits is 2/1/03. She stopped working on 5/23/03, as a result of surgery for a hernia. Dr. Galbraith conducted a review of the medical evidence contained in file on 10/16/03, and concluded, " She is limited from onset to present due to peripheral vascular disease, thrombosis and related conditions. Her ischemic peripheral neuropathy and related foot pain is related to peripheral vascular disease." As such, it is our conclusion that your client satisfies the Occupation Test as defined on page one of this letter, through at least October 2003. It is unclear whether or not she remains disabled beyond that date as no medical records beyond that date have been submitted.

Since your client is claiming disability commencing within one year of the effective date of her group Long-Term Disability coverage, it is necessary to conduct a pre-existing review. The applicable pre-existing period is 11/1/02 to 1/31/03. As stated in our 3/11/04 letter, Dr. Galbraith noted the following treatment during the pre-existing period:

**DURING THE PRE-EXIST PERIOD: ( 11/1/02 to 1/31/03)**

12/5/02, 1/14/03-Plavix #30 prescribed by Dr. Iarrobino for thrombotic events associated with peripheral vascular disease and coronary disease
11/23/02, 12/24/02- Lipitor #30 for hyperlipidemia prescribed by Dr. Beauregard
11/20/02 -Prevacid #30 prescribed by Dr. Iarrobino for GERD
11/21/02- Celebrex #21 prescribed by Dr. Iarrobino for unknown condition but typically used for arthritis
11/26/02- UGI and small bowel study performed for possible duodenal ulcer showed a small non-refluxing hiatal hernia, and some evidence for a post bulbar ulcer
12/5/02 -consult with Dr. Iarrobino for cholesterol and H. pylori testing
12/16/02 -x-ray of hand for possible foreign body with none found
12/19/02 -Lipids checked

**After the Effective Date (2/1/03 to 5/23/03)**

2/13/03- Consult for chest hurting for 5 days with productive cough and wheezes. She was diagnosed with bronchitis and questionable asthma. She had a fever of 101. Sleep study ordered for possible obstructive sleep apnea. Also, questionable fullness in the left quadrant of abdomen. CT scan ordered.
2/13/03-amoxicillin-clav for infection #21
2/13/03-albuterol inhaler for obstructive airway disease
2/13/03-guaifen #14 for productive cough



**FORTIS**

Solid partners, flexible solutions"

2/26/03-Plavix #30
3/7/03-Sleep study showed mild obstructive sleep apnea and restless leg syndrome. CPAP was recommended.
3/8/03-CT scan of abdomen and pelvis showed large para-umbilical hernia 5.6 cm. in diameter with bowel loops lying in the subcutaneous adipose compartment with no bowel obstruction or strangulation. Extensive atherosclerotic calcifications prominent.
3/26/03-Consult for "falling apart". Bruises, right leg cramps. Ecchymosis suspected due to Plavix and aspirin. Pruritis and dark urine. Hyperlipidemia. Pleuritis and costochondritis.
3/28/03-Lft's elevated? Discontinue Lipitor.
4/10/03-consult with surgeon Dr. Camer regarding her ventral hernia repair
1/12/03-propoxyphene #30 for post op pain by Dr. Camer
4/26/03-Transderm Scopalamine #4 patches by Dr. Beauregard for motion sickness
5/15/03-Consult for pre operative history and physical for ventral hernia repair. BP 148/100 to 152/98 (elevated).

Dr. Galbraith indicated that Mrs. Santosuosso has a long, complicated medical history. Peripheral vascular disease is atherosclerosis of the blood vessels of the lower extremities. Dr. Galbraith concluded that in the pre-existing period (11/1/02-1/31/03), Ms. Santosuosso consulted for, and was treated for, peripheral vascular disease, thrombosis, coronary artery disease, hyperlipidemia, abdominal pain, gastroesophageal reflux disease (GERD), ulcer, hiatal hernia, and possibly arthritis. She did not go any 3 consecutive months without medical services for peripheral vascular disease and thrombosis. She also concluded that, "She is limited from onset to present due to peripheral vascular disease, thrombosis and related conditions. Her ischemic peripheral neuropathy and related foot pain is related to peripheral vascular disease."

An independent review of the medical evidence contained in Mrs. Santosuosso's claim file was also conducted by Dr. Patman, a board certified vascular surgeon. Dr. Patman was asked whether there is evidence that the occlusion of Mrs. Santosuosso's graft is related to complications from the ventral hernia itself. Dr. Patman stated that the records do not provide evidence that the occlusion of the graft is related to complications from the ventral hernia itself. Dr. Patman said that any type of stress, such as an operative procedure will invoke various degrees of a hypocoagulable [hypercoagulable] state. This is associated with the interruption of daily medications, which may contribute to thrombus and ultimate graft occlusion.

Dr. Patman was also asked to comment on the cause of the neuropathy causing limitations in your client. Dr. Patman responded, "The neuropathy of the lower extremities causing limitations in Ms. Santosuosso is peripheral neuropathy of an ischemic basis because of multiple acute ischemic attacks and reoperative procedures on or about 6/7/02." Dr. Patman was also asked whether or not this complication or condition would



**FORTIS**

Solid partners, flexible solutions®

Page 5

have occurred in the absence of any peripheral vascular disease.  Dr. Patman opined, "This condition would not have occurred in the absence of any peripheral vascular disease in Ms. Santosuosso."

It is important to note that the policy language states that no benefits are available for *a disability* resulting, **directly** or **indirectly**, from a pre-existing condition or a related condition.   It is the determination of the Appeals Committee that Mrs. Santosuosso's disability results at least indirectly from the peripheral vascular disease, which is pre-existing.  If not for the pre-existing condition of peripheral vascular disease, the limiting neuropathy, which is ischemic in nature, would not have occurred.  Your client did not go any 3 consecutive months without medical services for peripheral vascular disease and thrombosis. Her ischemic peripheral neuropathy and related foot pain is related to peripheral vascular disease.  As such, Mrs. Santosuosso's disabling condition is pre-existing, according to Mrs. Santosuosso's group Long -Term Disability policy, and there are no benefits available.

As you were previously informed, the Appeals Committee is the final level of appeal available, and your file is now closed.

Sincerely,

Michele Falen

Michele Falen
Disability Appeals Specialist

**FORTIS**
Solid partners, flexible solutions®

**FORTIS**

**To the Claimant:**

If you wish to appeal, please read this entire document carefully; it contains important information.

As you will note from the attached letter, we have found it necessary to deny all or a portion of your claim for benefits under the policy.  The information provided below explains the process and procedure to be followed if you desire a formal review of the claim denial.

**Fortis Benefits Insurance Company**
**Group Claim Denial Review Procedure**

You are entitled to a full and fair review that does not afford deference to the initial decision to deny benefits, and is conducted by a fiduciary of the plan who is neither the individual who made the initial decision, nor the subordinate of such individual.  In order to request a review of our decision, you may contact the Plan Administrator, a named fiduciary or Fortis Benefits Insurance Company directly.  The procedure for such review is as follows:

Your request for review must be in writing and made within 180 days of receipt of the written notice of denial.

You have the right to review, upon request and free of charge, copies of all documents, records, and other information relevant to your claim for benefits.  You have the right to review copies of any internal rule, guideline, protocol, or other similar criterion that was relied upon in making our decision to deny your claim.  You also have the right to request that we identify all medical or vocational experts whose advice was obtained on behalf of the plan.

You have the right to submit issues and comments in writing, along with additional documents, records, and other information relating to your claim.

If the request for review is not submitted directly to Fortis, then the Plan Administrator, or named fiduciary, will be responsible for forwarding your written request to us.

Within 45 days after Fortis Benefits Insurance Company receives a request for review, we will render a decision, unless we determine that special circumstances require an extension of time for assessing the evidence and processing the claim.  In that event, we will render a decision within 90 days after the date the original written request for review was received.

Our decision will be in writing.  It will include the specific reasons for the decision, it will cite the specific plan provisions on which the determination is based, and it will describe any additional information necessary to perfect the claim.  Our written decision will either be furnished directly to you or the Plan Administrator, who will deliver it to you.

**Appeal Process**

The following is an explanation of the steps Fortis Benefits will take in handling your appeal for benefits.

First Review: If you request a review of our decision, your claim will be referred to an appeals specialist.  This is an individual who was not previously involved in the decision to deny your claim.  After considering your request for review, the appeals specialist will either overturn or uphold the denial.  The appeals specialist will notify you of this decision in writing.  Before reaching a decision, the appeals specialist may request additional information, an examination, an interview, or other evaluation, or consult with a health care professional or vocational expert regarding your claim.

Second Review: If your claim is denied after your initial request for review, you may request another review of our decision.  Your request for review would then be forwarded to a manager in the Disability Claims area or to the Fortis Benefits Disability Claims Appeals Committee.  The decision of that manager or committee is the final level of administrative review available.

### Right to Bring a Lawsuit



If your claim is denied by the Fortis Benefits Disability Claims Appeals Committee or Disability Claims Manager as part of the Second Review described above, you have the right to bring a civil action under section 502(a) of the Employee Retirement Income Security Act of 1974, if your claim is governed by this Act.  You and your plan may have other voluntary alternative dispute resolution options, such as mediation.  One way to find out what may be available is to contact your local U.S. Department of Labor Office and your state insurance regulatory agency.

**FORTIS**

Solid partners, flexible solutions®

### Guidelines for Requesting a Review of the Denial Decision

In the event you disagree with our decision, and before preparing your written request for review, we ask you to consider the following:

- Read the denial letter carefully.  It contains the specific reasons for the denial of your claim.

- Call us if you have any questions about the denial letter, or how to appeal the decision.

- If we concluded that you are not disabled, you may wish to discuss the contents of our denial letter with your physician.

There is a 180-day time limit, from your receipt of the denial letter, for filing your appeal.  We would encourage you to file your appeal as soon as you have drafted your written comments and gathered all of the evidence you wish to submit for us to review.

**Please utilize the attached APPEAL REQUEST form as an aid to assist you in preparing your written request for review. Returning this form will also expedite delivery of your appeal to our Appeal Team**.

## Statement of Information—Update

**FORTIS**
Solid partners, flexible solutions®

**To be completed by Insured**

Insured _____    Policy/participation no. __47910/?/?454__

Insured's address _____

Insured's phone number _____    Policyholder _____    **FORTIS**
Solid partners, flexible solutions®

1. Since you became disabled, have you acquired (or do you plan to acquire) any additional education or training?
   ☐ Yes    ☐ No    If "Yes," please describe. _____

2. Are you currently working or have you worked at any time since the inception of your disability for any employer or in your own business?    ☐ Yes    ☐ No    If "Yes," please describe. _____

3. The following questions should be answered to reflect your current income status. Please answer **"Yes"** or **"No"** to each source of income other than our Company's Long Term Disability Benefits. For every **"Yes"** answer indicate the **current** amount of each periodic benefit (*monthly, weekly, etc.*).

| | | Yes | Current Amount | No |
|---|---|---|---|---|
| A. Social Security or Railroad Retirement Act? | | | | |
| | 1. Primary (*amount for person disabled*) | ☐ | $_____ | ☐ |
| | 2. Dependent | ☐ | $_____ | ☐ |
| B. Workers' Compensation or similar legislation? | | ☐ | $_____ | ☐ |
| C. Group, Franchise, or Wholesale Income Replacement Plan? | | ☐ | $_____ | ☐ |
| D. Veteran's Administration or Welfare plan? | | ☐ | $_____ | ☐ |
| E. Monthly Income Disability Benefit from any group Life policies? | | ☐ | $_____ | ☐ |
| F. Federal, state, provincial, municipal, or other government agency? | | ☐ | $_____ | ☐ |
| G. Pension or retirement allowance? | | ☐ | $_____ | ☐ |
| H. Salary continuance in whole or in part? | | ☐ | $_____ | ☐ |
| I. Wages, salary, commissions, and fees for personal services rendered? | | ☐ | $_____ | ☐ |
| J. Other sources? | | | | |

4. For any "Yes" answer in item 3., provide the following information:

| Name and Address of source | Policy or claim number, if any | Exact date benefits commenced or will commence |
|---|---|---|
| | | |
| | | |
| | | |

I AUTHORIZE any provider of medical services, insurance or reinsuring company, consumer reporting agency, Social Security Administration, law enforcement agency, or employer, having information available as to diagnosis, treatment and prognosis with respect to any physical or mental condition any/or treatment of me and any other non-medical information of me to give to Fortis Benefits Insurance Company, its legal representative or agency employed by the Company, and all such information. I UNDERSTAND the information obtained will not be released by Fortis Benefits Insurance Company EXCEPT to reinsuring companies, or other persons or organizations performing business or legal services in connection with my claim or as may be otherwise lawfully required or as I may further authorize. I KNOW that I may request to receive a copy of the Authorization I AGREE that a photographic copy of this Authorization shall be as valid as the original. I AGREE this Authorization shall be valid for the duration of the claim. This authorization is not governed by HIPAA, however, when necessary, I may be asked to execute a HIPAA authorization form, allowing Fortis Benefits Insurance Company to use and disclose protected health information.

If I receive a disability benefit greater than that which should have been paid, I understand this Insurance Company has the right to recover such overpayments from me, including the right to reduce or adjust future disability benefits, if any.

Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information; or conceals, for the purpose of misleading, information concerning any fact material thereto, may be subject to criminal prosecution and civil penalties.

I certify to the best of my knowledge that the information on this form is a true and accurate statement of all material matters.

Date _____    Signature _____

**Fortis Benefits Insurance Company** P.O. Box 419568 Kansas City Missouri 64141-6568        KC0827 (2/2003)

**Appeal Request**



Solid partners, flexible solutions℠

**This form is to be used if you wish to appeal our decision. Attach another piece of paper if more room is needed for any of your responses.**

1.  *Tell us why* you believe our decision is incorrect. Be *specific* and complete as possible. We will be best able to address your concerns if you describe why you disagree with our determination.

2.  If benefits were denied because we found you not disabled, *indicate* the conditions that you feel are/were limiting you, and *explain* to us how these conditions have impacted your daily activities. Also *describe* the activities you are currently able to engage in.

3.  Please *list* the names, addresses and phone numbers of those individuals or organizations you believe have evidence that we are unaware of that supports your position, and *why*. (This could include, but is not limited to, physicians, psychologists, psychiatrists, physical therapists, hospitals and pharmacies.)

4.  *Attach* any additional records and documentation that you believe supports your position. (In the denial letter, we described various types of evidence that may assist you in perfecting your claim. Of course, you are not restricted to supplying us with only that information.)

    ☐ Check here if you will **not** be supplying any additional information.

5.  Please complete the attached **Statement of Information**, and return it, along with your completed **Appeal Request** and any **supporting documentation**, to the address shown on the letterhead of the denial letter.

    ☐ I wish to take advantage of my right to appeal and request that Fortis Benefits review the decision to deny benefits on my claim.

_____     _____     _____
SIGNATURE                                          DATE                                  SOCIAL SECURITY NUMBER

**Fortis Benefits Insurance Company**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1.  TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY)___Santosuosso vs. Fortis Benefits Insurance Company

2.  CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER

    SHEET.  (SEE LOCAL RULE 40.1(A)(1)).

        _____    I.      160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

        __X__   II.     195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740,     * Also complete AO 120 or AO 121
                        790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.                  for patent, trademark or copyright cases

        _____  III.     110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290,
                        315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
                        380, 385, 450, 891.

        _____  IV.     220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
                        690, 810, 861-865, 870, 871, 875, 900.

        _____   V.     150, 152, 153.

3.  TITLE AND NUMBER, IF ANY, OF RELATED CASES.  (SEE LOCAL RULE 40.1(E))._____

4.  HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?
                                                                YES ☐    NO ☒

5.  DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC

    INTEREST?   (SEE 28 USC 2403)                              YES ☐    NO ☒
    IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?
                                                                YES ☐    NO ☒

6.  IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC

    2284?                                                       YES ☐    NO ☒

7.  DO ALL PARTIES IN THIS ACTION RESIDE IN THE CENTRAL DIVISION OF THE DISTRICT OF MASSACHUSETTS (WORCESTER

    COUNTY) - (SEE LOCAL RULE 40.1(C)).                          YES ☐    NO ☒
    OR IN THE WESTERN DIVISION (BERKSHIRE, FRANKLIN, HAMPDEN OR HAMPSHIRE COUNTIES)?(SEE LOCAL RULE 40.1(D)).
                                                                YES ☐    NO ☒

8.  DO ALL OF THE PARTIES RESIDING IN MASSACHUSETTS RESIDE IN THE CENTRAL AND/OR WESTERN DIVISIONS OF THE DISTRICT?
                                                                YES ☐    NO ☒

    (a)     IF YES, IN WHICH DIVISION DOES THE PLAINTIFF RESIDE?_____

9.  IN WHICH DIVISION DO THE ONLY PARTIES RESIDING IN MASSACHUSETTS RESIDE?_____

10. IF ANY OF THE PARTIES ARE THE UNITED STATES, COMMONWEALTH OF MASSACHUSETTS, OR ANY GOVERNMENTAL AGENCY OF
    THE U.S.A. OR THE COMMONWEALTH, DO ALL OTHER PARTIES RESIDE IN THE

    CENTRAL DIVISION; YES ☐    NO ☐         OR WESTERN DIVISION;    YES ☐    NO ☐

11. ALTERNATIVE DISPUTE RESOLUTION - IS THIS CASE SUITABLE FOR ADR?  IF SO, BY WHICH ADR?

    EARLY NEUTRAL EVALUATION ☐        MEDIATION ☐         SUMMARY JURY/BENCH TRIAL ☐

    MINI-TRIAL ☐                     OTHER ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME_____

ADDRESS_____470 West Broadway, PO Box E46, South Boston, MA 02127

TELEPHONE NO._617-269-1993

(Category Form.wpd - 3/28/2000)

%JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Santosuosso

### DEFENDANTS
Fortis Benefits Insurance Company

**(b)** County of Residence of First Listed Plaintiff    Norfolk
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Jackson
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Gannon & Hurley, P.C.   Francis J. Hurley
PO Box E46
So. Boston, MA 02127   (617) 269-1993

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question (U.S. Government Not a Party) |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☒ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Appeal to District Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
29 U.S.C. 18

Brief description of cause:
To order the Defendant to pay Plaintiff benefits due under LTD. Insurance Policy.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE   4-24-05

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____